IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY

WARREN CUTHA HESTER, II,

   Plaintiff,

v.          Case No. 5:07-cv-00401

STATE OF WEST VIRGINIA,
JOHN HUTCHISON, and
KRISTEN KELLER,

   Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are a Motion to Dismiss filed by defendants John A. Hutchison (hereinafter "Judge Hutchison") and the State of West Virginia (# 28), a Motion to Dismiss filed by defendant Kristen L. Keller (hereinafter "Ms. Keller") (# 31), and Plaintiff's Motion for Preliminary Injunction and Prospective Injunctive Relief (# 34).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 26, 2007, Plaintiff, who is incarcerated at the Mount Olive Correctional Complex, in Mount Olive, West Virginia, filed a Complaint under 42 U.S.C. § 1983, in which he alleges as follows:

> Two West Virginia state officials opened my juvenile
> record to the public. In January 2006 Raleigh County
> Judge John Hutchison and Raleigh County Prosecutor
> Kristen L. Keller opened my juvenile record to the
> public. It is illegal, unconstitutional, a violation of
> my civil rights and civil liberties under the West
> Virginia and United States Constitution to open to the
> public for view a West Virginia citizen juvenile record.
> Prosecutor of the State of West Virginia Kristen L.
> Keller violated a federal law.  Because she did not
> petition the District of Columbia courts, which is a
> federal court, to open my District of Columbia juvenile
> records to the State of West Virginia.

(# 1 at 4-5).  Petitioner's Complaint seeks the following relief:

> I would like the United States District Court to order
> the State of West Virginia, and Raleigh County Circuit
> Judge John Hutchison to reseal my juvenile records so
> they will not be opened to the public any longer.  I
> would like the U.S.D.C. to order the State of West
> Virginia and the Raleigh County Prosecutor's Office, and
> Kristen L. Keller to remove my juvenile records from my
> adult files in the Raleigh County Prosecutor's Office.
> I would also like the U.S.D.C. to order the State of West
> Virginia to stop all state newspapers, television
> station[s] and radio stations from printing,
> broadcasting, reprinting nor rebroadcasting any
> information about my juvenile record.

(Id. at 5-6).

On July 5, 2007, Plaintiff filed a document entitled "Motion
to Amend His Pleading and Clearify [Clarify] the Plaintiff's Intent
for Filing Said Complaint," in which Plaintiff sought to clarify
that he is suing Judge Hutchison and Ms. Keller in both their
official and individual capacities, that he seeks only injunctive
relief from them in their official capacities, and that he is
seeking monetary damages from them in their individual capacities.
(# 4).  The Motion to Amend also alleges that Ms. Keller's actions

2

violated his rights to privacy and due process, and that his juvenile records are confidential and could only be opened through a judge in the District of Columbia.  Plaintiff alleges that the defendants "failed to go through that process."  (Id. at 2).

The undersigned granted Plaintiff's Motion to Amend Complaint on July 24, 2007, and ordered that summonses be issued and served upon the defendants by the United States Marshals Service.  (# 10). Following service of process, on August 21, 2007, the State of West Virginia and Judge Hutchison, by counsel, John M. Hedges, of the law firm of Byrne Hedges & Lyons, filed a Motion for More Definite Statement (# 19).  On August 24, 2007, Ms. Keller, by counsel, Douglas P. Buffington, of the law firm of Pullin Fowler & Flanagan, PLLC, filed a Motion for More Definite Statement (# 20) and a Memorandum of Law in support thereof (# 21).

On October 22, 2007, the undersigned granted the Motions for More Definite Statement (## 19, 21), and ordered Plaintiff to supplement his Complaint with a statement of facts in support of his claim by November 9, 2007.  (# 22).

On November 5, 2007, Plaintiff filed "Answers" in response to the Motions for More Definite Statement (## 23, 24).  In those Answers, Plaintiff asserts that Judge Hutchison "illegally authorized" the release of Plaintiff's District of Columbia and State of Ohio juvenile court records to the public.  (# 23 at 3). Plaintiff further asserts that Ms. Keller "criminally introduc[ed]

3

information concerning the Plaintiff's District of Columbia and The State of Ohio Juvenile Court Record to the local television station, WOAY-TV and newspaper company, The Beckley Register Herald . . . ." (# 24 at 2).  Plaintiff further continues to assert that Ms. Keller violated state and federal law by obtaining Plaintiff's juvenile court records without acquiring permission from the presiding judges of the District of Columbia or Ohio courts. Plaintiff asserts that the defendants' conduct violated West Virginia, Ohio and District of Columbia statutes pertaining to juvenile proceedings, as well as the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq., and also asserts that the defendants violated 18 U.S.C. §§ 241 and 242.  Plaintiff further maintains that Ms. Keller violated federal law because the District of Columbia is a "federal city under federal jurisdiction." (Id. at 4).

On November 19, 2007, Judge Hutchison and the State of West Virginia filed a Motion to Dismiss (# 28) and a Memorandum of Law in support thereof (# 29).  Judge Hutchison asserts that he is absolutely immune from liability on Plaintiff's claim for money damages because his conduct occurred in his role as a judicial officer.  The Motion to Dismiss further asserts that the State of West Virginia, and Judge Hutchison in his official capacity, are immune from suit under the Eleventh Amendment.  The Motion to Dismiss further asserts that Plaintiff has not demonstrated that he

4

is entitled to injunctive relief.

On December 20, 2007, Ms. Keller, who at the time of the events in question was Acting Prosecuting Attorney for Raleigh County, West Virginia, filed a Motion to Dismiss and a Memorandum of Law in support thereof (# 31).  In her Motion to Dismiss, Ms. Keller also asserts that she is absolutely immune from liability because her conduct consisted of "quasi-judicial" functions in her role as a prosecuting attorney.  In the alternative, Ms. Keller asserts that she is entitled to qualified immunity for her conduct. She further asserts that Plaintiff has not demonstrated that he is entitled to injunctive relief, and also asserts that Plaintiff's Complaint amounts to a collateral attack on his criminal conviction, which has not been overturned and, thus, he is not entitled to damages under Heck v. Humphrey, 512 U.S. 477 (1994).

None of the parties has been very forthcoming with the underlying facts of this case.  From the defendants' motions, the undersigned has ascertained that Plaintiff was convicted in the Circuit Court of Raleigh County, West Virginia, of two counts of first degree sexual assault, and one count each of battery, brandishing, kidnapping and nighttime burglary (State v. Hester, Case No. 05-F-189-H).  During the course of that criminal proceeding, Judge Hutchison granted the State's motion to admit evidence under Rule 404(b) of the West Virginia Rules of Evidence, which apparently included evidence of other sexual crimes that were

committed by Plaintiff, when he was a juvenile, in the State of Ohio and in the District of Columbia. The court, over Plaintiff's objection, admitted the testimony of the victims of those other crimes. According to Judge Hutchison's Memorandum of Law in support of his Motion to Dismiss:

> And during the course of the underlying proceedings, the state proffered evidence regarding criminal acts committed by the defendant while he was a juvenile. The prosecutor submitted the Plaintiff's juvenile records from the State of Ohio and the District of Columbia because in both of those jurisdictions the Plaintiff was adjudicated delinquent of sexual assault, and because the former crimes were strikingly similar to the present adult charge. Over the objection of Mr. Hester, the victims of those crimes were permitted to testify pursuant to Rule 404(b) of the West Virginia Rules of Evidence, and the physical records were admitted as exhibits. By oral order of the Circuit Court of Raleigh County, the copies of the juvenile records were sealed at the conclusion of the trial.

(# 29 at 8).

Ms. Keller's Memorandum of Law in support of her Motion to Dismiss confirms these facts, stating:

> During the trial, Kristen Keller, acting prosecutor, sought to introduce Rule 404(b) evidence. After conducting a hearing and entertaining objections from the Defendant/Plaintiff, the Court ruled that the 404(b) evidence was admissible to prove the identity of the assailant.

(# 31, Memorandum of Law at 2). Nowhere in Ms. Keller's pleadings and briefs does she address how she obtained copies of Plaintiff's juvenile records from the State of Ohio or the District of Columbia. However, Ms. Keller has asserted that Plaintiff's juvenile records from Ohio and the District of Columbia are not

6

sealed from public access.  Her Memorandum of Law states:

> It is worthy of mention that, contrary to the Plaintiff's
> assertions[,] according to the statutory provisions in
> both Ohio and the District of Columbia, the Plaintiff's
> juvenile law enforcement records are not sealed from
> public access.  In Ohio, due to the violent nature of the
> Plaintiff's offense, his juvenile records are not under
> seal.  See R.C. §2151.356(A).  In D.C., assuming the
> records were sealed pursuant to DC ST §16-2335(a), they
> are no longer under seal due to Plaintiff's felony
> convictions.  See DC ST §16-2335(e)("conviction of a
> felony subsequent to sealing shall have the effect of
> nullifying the vacating and sealing order").

(# 31 at 13 n.2).  Ms. Keller further asserts that the District of
Columbia statutes permit disclosure of juvenile records to "any
other prosecuting attorneys, or defense attorneys, when necessary
for the discharge of their official duties."  (# 37 at 4).

As will be further discussed below, the undersigned finds that
neither the conduct of obtaining Plaintiff's juvenile records, or
introducing evidence from Plaintiff's juvenile proceedings in a
West Virginia state court criminal trial violated any of
Plaintiff's federal constitutional or statutory rights, so as to
subject the defendants to liability under 42 U.S.C. § 1983.

On February 12, 2008, Plaintiff filed three documents entitled
"Motion to Renounce Defendant's Kristen L. Keller's Motion to
Dismiss" (# 32), "Motion to Refute Defendants John A. Hutchison's
and Kristen L. Keller's Argument the Plaintiff is Complaining of
Trial Errors" (# 33), and "Motion to Answer and Object to Defendant
John Hutchison's Motion to Dismiss" (# 35).  The undersigned
construes these documents as responses to the defendants' motions

to dismiss, and the undersigned shall hereinafter refer to them as "Plaintiff's responses."  Accordingly, to the extent that these documents were docketed as motions, it is respectfully **RECOMMENDED** that such motions be **DENIED**.

## STANDARD OF REVIEW

The Supreme Court recently addressed the standard for granting a motion to dismiss in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007).  In <u>Twombly</u>, the Court observed that a motion to dismiss should be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1968-69 (explaining that the pleading standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) whereby courts look to whether the plaintiff can prove "no set of facts" giving rise to a claim "has earned its retirement").  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Id.</u> at 1964-65.

## ANALYSIS

The first issue the undersigned must address is whether this federal court has jurisdiction over the subject matter of Plaintiff's Complaint.  It is apparent from the face of the Complaint, that all of the parties named therein are citizens of

the State of West Virginia.  Accordingly, there is no basis for jurisdiction over this matter under the court's diversity of citizenship jurisdiction.  See 28 U.S.C. § 1332.

Turning to whether the plaintiffs have alleged a claim under the court's federal question jurisdiction, Plaintiff has alleged that the defendants have violated certain of his civil or constitutional rights.  In order to obtain relief for such alleged violations in this federal court, Plaintiff's claims must be addressed under 42 U.S.C. § 1983, which requires a showing that the defendants were acting under color of state law at the time of the alleged violation.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West v. Atkins, 487 U.S. 42, 49 (1988)(quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  Thus, to act under color of state law, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and the "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)).  There is no question that the defendants herein were acting under color of state law.

9

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  Thus, the question before this court is whether the conduct of the defendants deprived Plaintiff of any right, privilege or immunity secured by the Constitution or laws of the United States.

### A.   Plaintiff's Complaint does not state a claim for relief based on West Virginia or federal statutory law.

Before addressing the specific arguments made by each defendant in their Motions to Dismiss, the undersigned notes that there are several fundamental flaws with some of Plaintiff's claims.  First, to the extent that Plaintiff has repeatedly alleged that the defendants have violated West Virginia's laws concerning the use and disclosure of juvenile records, found in Title 49 of the West Virginia Code, that claim lacks merit because those statutes are only applicable to records of juvenile proceedings that took place in West Virginia courts.  <u>See</u> W. Va. Code § 49-5-

17(a)("Records of a juvenile proceeding <u>conducted under this</u> <u>chapter</u> are not public records and shall not be disclosed to anyone unless disclosure is otherwise authorized by this section.") Thus, access to or disclosure of juvenile records from other states is not governed by the West Virginia statutes, but by the statutes of those states.

Second, Plaintiff has also alleged that the defendants have violated federal law because "the District of Columbia is a federal city." This claim is also without merit. District of Columbia statutes are not federal laws which govern other states.

Third, Plaintiff has alleged that the defendants' conduct violated the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 <u>et</u> <u>seq.</u> This allegation also fails to state a claim because the Federal Juvenile Delinquency Act only applies to juveniles who were charged with <u>federal</u> crimes. Thus, it is inapplicable to Plaintiff's circumstances.

Fourth, Plaintiff has alleged that the defendants have "committed federal crimes" in violation of 18 U.S.C. §§ 241 and 242 by opening Plaintiff's juvenile court records to the public. Those provisions of the United States Code are provisions of criminal law. A private citizen may not institute a civil action under the authority of a criminal law. Accordingly, the plaintiffs' Complaint fails to state a claim upon which relief can be granted under those provisions.

11

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim upon which relief can be granted on any of these bases. The salient issue before this court is whether the defendants' actions in obtaining and disclosing Plaintiff's juvenile records from the State of Ohio and the District of Columbia, during his criminal proceeding in the State of West Virginia, deprived Plaintiff of any right, privilege or immunity under the federal Constitution.

**B.     Plaintiff's Complaint does not demonstrate a federal constitutional violation.**

Central to Plaintiff's section 1983 claims is a determination of whether Plaintiff's juvenile records are constitutionally protected. Based upon the authority discussed below, the undersigned proposes that the presiding District Judge **FIND** that they are not.

Plaintiff's Complaint does not specifically identify the particular constitutional provisions that he alleges the defendants' conduct violated. The Complaint merely states that the "opening" of his juvenile record to the public "is illegal, unconstitutional, a violation of my civil rights, and civil liberties . . . ." (# 1 at 4-5). However, in Plaintiff's responses to the defendants' motions, he identifies his rights to substantive and procedural due process under the Fourteenth Amendment as the rights he alleges have been violated.

12

Specifically, Plaintiff's "Motion to Renounce Defendant Kristen L. Keller's Motion to Dismiss" states:

> The due process clause of the 14th Amendment forbids the state from depriving any person of life, liberty, or property, without due process of law.  The clause has been interpreted as containing two separate types of protections, one called substantive due process and the other called procedural due process.  Substantive due process protects the Plaintiff form [sic; from] unfair deprivations of fundamental rights, such as confidentiality of his juvenile court records. Substantive due process legally protects the Plaintiff from the Defendants['] illegal relinquishing of his juvenile court records to the public.
>
> Another substantive due process issue is the right to informational privacy and confidentiality.  Courts have interpreted the 14th Amendment to find that HIV-positive citizens have the protection against disclosure of their HIV status, at least to non-medical personal [sic; personnel], see <u>Woods v. White</u>, 689 F. Supp. 876 (W.D. Wisc. 1988).  The Plaintiff's Juvenile Court Records also fall under the right to informational privacy, by court order and statutory law.  The Defendants committed a harmful and outright shocking violation of the Plaintiff's 14th Amendment Right to informational privacy, that is contrary to traditional notions of statutory law, declaratory decrees and insults the concept of ordered liberty.
>
> * * *
>
> The Defendant also violated the Plaintiff's Procedural Due Process Rights, by depriving the Plaintiff of liberty of juvenile record confidentiality, and ignoring the due process of law.  This deprivation was conducted in an unfair manner and against all state law.

(# 32 at 20-21).  In Plaintiff's "Motion to Answer and Object to Defendant John Hutchison's Motion to Dismiss," Plaintiff additionally asserts, in passing, that the defendants' conduct violated his right to privacy under the Fourth Amendment to the

United States Constitution.    (# 35 at 18-19).    He does not elaborate on that allegation.

The Supreme Court has recognized that certain fundamental privacy rights are afforded protection under the United States Constitution.    In Lambert v. Hartman, 517 F.3d 433, 440 (6th Cir. 2008), the Court discussed the privacy protections recognized by the Supreme Court as follows:

> Two types of interest have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment.    One is the interest in "independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600 & n.26, 97 S. Ct. 869, 51 L. Ed.2d 64 (1977)(noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education" (quoting Paul v. Davis, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed.2d 405 (1976))).    The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." Id. at 599, 603-04, 97 S. Ct. 869 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interests in nondisclosure, but upholding the law because the statute contained adequate security measures); Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 465, 97 S. Ct. 2777, 53 L. Ed.2d 867 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).    Lambert's claim implicates the latter interest, which this court has described as "an individual's right to control the nature and extent of information released about that individual" and that "has been coined an informational right to privacy."    Bloch v. Ribar, 156 F.3d 673, 683 (6th Cir. 1998).

14

The Supreme Court has not specifically addressed whether privacy interests concerning juvenile court records recognized under state laws are constitutionally protected. In <u>Davis v. Alaska</u>, 415 U.S. 308, 319 (1974), the Court stated that the anonymity provided to juvenile offenders is a matter of state policy.

The United States Court of Appeals for the Fourth Circuit addressed a constitutional claim concerning the privacy of juvenile records in an unpublished, per curiam opinion in <u>United States v. T.E.S.</u>, 165 F.3d 913, 1998 WL 774144 (4th Cir., Nov. 6, 1998)(unpublished). In that case, the United States petitioned the Circuit Court of Baltimore County for release of a Maryland juvenile's records for use in the juvenile's prosecution on federal charges, including murder. The juvenile contended that the Maryland statute governing the confidentiality of juvenile court records, and the requirement that the records not be released, except by court order upon good cause shown, created a reasonable expectation of privacy in the nondisclosure of the juvenile records and/or a liberty interest protected under the Due Process Clause. The Fourth Circuit found that the Maryland statute created neither a "reasonable expectation of privacy" nor a "liberty" interest that would implicate constitutional due process protections. <u>Id.</u> at *3.

Other federal Circuit Courts have also directly addressed this point, and found no constitutional protection. As noted by the

15

United States Court of Appeals for the Sixth Circuit in <u>J.P. v.</u>
<u>DeSanti</u>, 653 F.2d 1080, 1088 (6th Cir. 1981):

> [T]he fact that the Constitution protects several
> specific aspects of individual privacy does not mean that
> it protects all aspects of individual privacy.  Nor is
> there any indication in any of the [Supreme Court's]
> decisions of a constitutional right to nondisclosure of
> juvenile court records.  Rather, such disclosure is
> indistinguishable from that permitted in <u>Paul v. Davis</u>,
> 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed.2d 405 (1976).
> There the respondent alleged that circulation to
> merchants by police of the fact of his arrest for
> shoplifting (he had not been convicted) violated his
> constitutional right to privacy.  The Court recognized
> that "zones of privacy may be created for more specific
> constitutional guarantees . . . ." Id. at 712-713, 96 S.
> Ct. at 1165-1166.  However, the Court held, "personal
> rights found in (the) guarantee of personal privacy must
> be limited to those which are 'fundamental' or 'implicit
> in the concept of ordered liberty' . . . . Respondent's
> claim is far afield from (the privacy) line of
> decisions."  Id. at 713, 96 S. Ct. at 1166.

The Third Circuit also addressed this issue in <u>United States</u>
<u>v. Jiles</u>, 658 F.2d 194 (3d Cir. 1981), which concerned whether the
appellee's constitutional rights were violated by the use of his
juvenile arrest photograph in another photographic identification
procedure.  The Court held:

> Not all violations of state law arise to the level of
> constitutional error. <u>Bishop v. Wood</u>, 426 U.S. 341, 349
> n.13, 96 S. Ct. 2074, 2080 n.13, 48 L. Ed.2d 684 (1976),
> <u>Elkins v. United States</u>, 364 U.S. 206, 223-24, 80 S. Ct.
> 1437, 1447, 4 L. Ed.2d 1669 (1960); <u>Screws v. United</u>
> <u>States</u>, 325 U.S. 91, 108, 65 S. Ct. 1031, 1038, 89 L.
> Ed.2d 1495 (1945); <u>United States v. Scolnick</u>, 392 F.2d
> 320, 323 (3d Cir.), <u>cert. denied sub nom</u>, <u>Brooks v.</u>
> <u>United States</u>, 392 U.S. 931, 88 S. Ct. 931, 88 S. Ct.
> 2283, 20 L. Ed.2d 1389 (1968).  In determining whether
> the violation of a particular state law deprived a
> defendant of his due process rights under the fifth
> amendment, we must ascertain whether the state law

16

directly conferred a substantive right on the defendant or merely created an administrative plan to help the state regulate its officers' conduct. [Citations omitted].

In the instant case the state created a procedure to protect juveniles from having their juvenile criminal records released to the public. [Citation omitted]. Within that procedure was a special safeguard requiring that a court order be secured before photographs from juvenile records are released to other law enforcement officials. This safeguard, while helpful to the state in ensuring that records would not be released to the general public, did not create a property interest on behalf of the appellee. Law enforcement agencies were intended to have access to these records. Accordingly, we hold that appellee has failed to satisfy the first requirement of proving a due process violation; he has not demonstrated that he was deprived of a "property" or "liberty" interest protected by the due process clause. [Citations omitted].

Id. at 200; see also Eagle v. Morgan, 88 F.3d 620 (8th Cir. 1996); Nilson v. Layton City, 45 F.3d 369 (10th Cir. 1995)(illegal disclosure of criminal records does not implicate 14th Amendment right to privacy).

Likewise, the Supreme Court has not recognized a right to privacy in juvenile records under the Fourth Amendment to the United States Constitution. In United States v. Miller, 425 U.S. 434, 443 (1976), the Court stated:

From the Fourth Amendment perspective, it does not matter whether Petitioners followed the correct procedure for accessing Respondent's records under California Welfare and Institutions Code section 827(a)(1)(M). Petitioner's actions may have violated state law . . . . But absent a reasonable expectation of privacy for the juvenile court's record in the context of Respondent's federal civil rights action against the County and its juvenile court, the Petitioner's access to the records did not violate his Fourth Amendment rights.

17

Based upon this authority, the undersigned proposes that the presiding District Judge **FIND** that there is no recognized substantive or procedural due process right to privacy in juvenile records. Therefore, the conduct of the defendants, as alleged in the Complaint and taken as true, could not have violated any of Plaintiff's federal constitutional rights.

To the extent that Plaintiff's Complaint and response documents assert the violations of other amendments to the United States Constitution, i.e., the 5th, 8th, 9th and 10th Amendments, Plaintiff has failed to allege how any of his rights under those provisions were violated, and the undersigned does not see how the rights guaranteed under those amendments are applicable to Plaintiff's situation.

Because Plaintiff cannot demonstrate a violation of a right, privilege or immunity guaranteed under federal law, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff cannot state a claim for relief against the defendants under 42 U.S.C. § 1983.

## C. Defendants Hutchison and Keller are entitled to absolute immunity.

Both defendants Hutchison and Keller have moved to dismiss Plaintiff's claims for monetary damages against them on the basis of absolute immunity. Judge Hutchison's Motion to Dismiss is based on judicial immunity. His Memorandum of Law in support of his

Motion to Dismiss states:

> Judicial immunity is a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in exercise of their judicial functions. <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S. Ct. 1099 (1978). The primary policy that supports judicial immunity is also well-established.  As early as 1872, the Supreme Court recognized that it is:
>
>> [A] general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself. <u>Bradley v. Fisher</u>, 13 Wall. 335, 347, 20 L.Ed. 646 (1872).
>
> Naturally, the scope of judicial immunity is interpreted broadly, in <u>Bradley</u>, the Supreme Court held: "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. <u>Bradley</u>, 13 Wall. at 351.

(# 29 at 14).  Judge Hutchison further notes that the only exceptions to absolute judicial immunity are for non-judicial acts, or where the act is done in complete absence of jurisdiction. <u>Stump</u>, 435 U.S. at 360; <u>Bradley</u>, 13 Wall. at 351.  (<u>Id.</u>)

Judge Hutchison asserts that Plaintiff's Complaint against him "is based entirely on Judge Hutchison's evidentiary rulings in an underlying criminal case brought against the defendant . . . ." (<u>Id.</u> at 15).  His Memorandum of Law further asserts:

> It is indisputable that Judge Hutchison's rulings in the underlying criminal case are judicial acts immune from civil suit by the doctrine of absolute judicial immunity. As a duly elected judge of the Tenth Judicial Circuit of West Virginia, Judge Hutchison was authorized

19

> to rule on the admission of evidence during the
> Plaintiff's criminal trial. These types of evidentiary
> rulings are clearly functions that are routinely
> performed by trial court judges such as Judge Hutchison.
> Further, the Plaintiff does not allege any facts that
> suggests he ever dealt with Judge Hutchison outside of
> his judicial capacity.
>
> It is also evident that Judge Hutchison did not act
> in a clear absence of all jurisdiction.

(Id. at 16). Judge Hutchison further asserts that, even if he

acted in error, he is still immune. See Stump, 435 U.S. at 356.

He adds, "[b]y the same token, the [Supreme] Court has stated that

a judicial act 'does not become less judicial by virtue of an

allegation of malice or corruption.'" Forester v. White, 484 U.S.

219, 227 (1988). (Id. at 17).

Ms. Keller's Motion to Dismiss also asserts that she is

entitled to absolute immunity, because her actions were "quasi-

judicial," taken in her role as prosecuting attorney. Ms. Keller

cites Imbler v. Pachtman, 424 U.S. 409, 427 (1976), in which the

Supreme Court held that a state prosecutor is entitled to the same

absolute immunity under § 1983 that such prosecutor enjoys at

common law. Ms. Keller's Memorandum of Law in support of her

Motion to Dismiss further states:

> The common law immunity of a prosecutor is based
> upon the same considerations that underlie the common law
> immunities of judges and grand jurors acting within the
> scope of their duties. Imbler, 424 U.S. at 422-23. The
> Supreme Court fully recognizes that "this immunity [may
> leave] the genuinely wronged defendant without civil
> redress . . . [however] the alternative of qualifying a
> prosecutor's immunity would defeat the broader public
> interest. It would prevent the vigorous and fearless

20

> performance of the prosecutor's duty that is essential to the criminal justice system." <u>Imbler</u>, 424 U.S. at 427. Thus, the Supreme Court underscored its previous reasoning that it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. <u>Imbler</u>, 424 U.S. at 428.

(# 31-4 at 6).

While not every action by a prosecuting attorney is shielded by absolute immunity, the Supreme Court has applied absolute immunity to "quasi-judicial" functions of a prosecutor. In <u>Imbler</u>, and again in <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991), the Supreme Court described "quasi-judicial functions" as being "intimately associated with the judicial phase of the criminal process."

In <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1463 ((3d Cir. 1992), cited by Ms. Keller, the court described "quasi-judicial" actions as those taken while in court, or out of court actions that are "intimately associated with the judicial phases" of litigation. The <u>Kulwicki</u> court noted that the "[i]mmunity extends to 'the preparation necessary to present a case,' and this includes the 'obtaining, reviewing, and evaluation of evidence.'" (quoting from <u>Scrob v. Catterson</u>, 948 F.2d 1402, 1406-07 (3d Cir. 1991), which cited <u>Imbler</u>, 424 U.S. at 431 n.33). (<u>Id.</u> at 7).

Ms. Keller's Memorandum of Law further asserts:

> In the instant case, the actions of Kristen Keller are clearly prosecutorial functions intimately associated with the judicial phase of the criminal process. The Plaintiff's arguments are centered around obtaining juvenile records and introducing evidence regarding his juvenile history during the course of his trial. Kristen

21

> Keller, acting as a prosecutor, was charged with
> preparing her case including making a determination of
> how to present evidence during both hearings and trial.
> While the Plaintiff may make unfounded allegations that
> the gathering or introduction of such evidence [was]
> illegal or in violation of his civil rights, there can be
> no argument that these actions including making a
> determination what evidence should be used during trial
> and eliciting and/or admitting such evidence during trial
> is [sic; are] intimately associated with the judicial
> phase of the criminal process.   Finally, without
> question, Kristen Keller was working within the scope of
> duties as a prosecutor when she took these actions.  As
> such, she is afforded absolute immunity for both federal
> and state causes of action.

(Id. at 8).

Plaintiff's responses assert that both Judge Hutchison and Ms. Keller acted in absence of all jurisdiction, simply on the basis that they allegedly violated state laws concerning the confidentiality of juvenile court records, and the procedure for the review and release of such records.   (## 32, 34).   The undersigned finds this allegation to be without merit, as both defendants were engaging in conduct that was within their powers under West Virginia law to prosecute and preside over Plaintiff's criminal proceedings. See W. Va. Const. art. VIII, § 6 and W. Va. Code § 55-2-2; see also, State v. Rygh, 524 S.E.2d 447 (1999)(prosecution may introduce a defendant's juvenile law enforcement records at trial, so long as they are not part of the State's case in chief). (# 29 at 16-17 nn. 6 and 7); # 31-4 at 18 n.6)  Absolute immunity has been held to shelter judges and prosecutors even where they have acted "maliciously, wantonly or

22

negligently."  See Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985).  (# 31-4 at 7).

The undersigned agrees that Judge Hutchison's conduct in this matter was limited to actions taken in his judicial capacity.  See Mireles v. Waco, 502 U.S. 9 (1991); see also Stump, 435 U.S. 349 (1978)(judicial immunity applies even where judge accused of acting maliciously; only inapplicable where judge has acted in "clear absence of all jurisdiction").  Plaintiff's Complaint does not allege maliciousness, and Plaintiff has not demonstrated that Judge Hutchison acted in clear absence of all jurisdiction.  Accordingly, the undersigned proposes that the presiding District **FIND** that Judge Hutchison is absolutely immune from liability on Plaintiff's claims.

The undersigned also proposes that the presiding District Judge **FIND** that the actions taken by Ms. Keller, as alleged in Plaintiff's Complaint, were part of the preparation necessary to present a case and, thus, were "quasi-judicial" in nature. Consequently, the undersigned further proposes that the presiding District Judge **FIND** that Ms. Keller is entitled to absolute immunity on Plaintiff's claims against her.

**E.   Collateral attack on Plaintiff's conviction.**

Defendant Keller also asserts that Plaintiff's claim against her is barred under the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), because it is a collateral attack on

23

his criminal conviction.  In <u>Heck</u>, the Supreme Court held that:

> in order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such
> determination, or called into question by a federal
> court's issuance of a writ of habeas corpus.

512 U.S. at 486-487.  Ms. Keller contends that a finding that

Plaintiff's juvenile records were improperly made public would call

into doubt the validity of Plaintiff's conviction.  Her Memorandum

of Law in support of her Motion to Dismiss states:

> In the instant matter, the Plaintiff is alleging
> that Kristen Keller illegally obtained juvenile records
> and improperly permitted such evidence to be heard by the
> media or public.  First, there is no cause of action for
> obtaining records.  If there was a cause of action, it
> would be against the agency who released such records and
> not the person requesting them.  Additionally, these
> issues were brought before the Court and Judge Hutchison
> admitted the evidence.  If the Court were to find that
> obtaining these records was illegal and a violation of
> the Plaintiff's Constitutional Rights, it would
> essentially find that the evidence admitted during his
> criminal trial was improper.  As such, by allowing the
> proceedings to go forward, it would permit a collateral
> attack on the Plaintiff's conviction.

(# 31 at 4).  Ms. Keller further asserts that Plaintiff's claim is

analogous to a claim of malicious prosecution and that, similar to

the claim in <u>Heck</u>, such a claim cannot succeed without a showing

that the prior criminal proceeding terminated in Plaintiff's favor,

which Plaintiff cannot do.

In light of the proposed finding that the defendants are absolutely immune from liability on Plaintiff's claims, the undersigned finds it unnecessary to address this argument, or the argument that Ms. Keller is entitled to qualified immunity.

**E.   Claims against The State of West Virginia and claims for injunctive relief.**

Plaintiff's Complaint contains specific requests that this Court order the State of West Virginia and Judge Hutchison to reseal his juvenile records, order the State of West Virginia to remove his juvenile records from his adult criminal records, and order the State of West Virginia to stop all media coverage relating to his juvenile records.

The State of West Virginia has moved for dismissal from this civil action on the basis of immunity under the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment bars suits by a citizen against the State unless the State has waived its sovereign immunity.  West Virginia has not waived its immunity in connection with allegations similar to those made by Plaintiff. In Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65 (1989), the Supreme Court held that a State is not a "person" within the meaning of 42 U.S.C. § 1983.  The Court held that "Section 1983 . . . does not provide a federal forum for litigants who seeks a remedy against a State for alleged deprivations of civil liberties."  Id.  Similarly, "a suit against a state official in his or her official capacity is . . . a suit against the official's

25

office." <u>Id.</u>, at 71.  Such cases are also barred by the Eleventh Amendment.

Plaintiff has stated that he is not suing the State of West Virginia; but rather is suing defendants Hutchison and Keller as West Virginia officials.  (# 35 at 3).  However, Plaintiff is clearly asking for injunctive relief from the "State of West Virginia."  Thus, the undersigned will now turn to Plaintiff's requests for injunctive relief.

As stated previously, Plaintiff's Complaint seeks the following injunctive relief:

> I would like the United States District Court to order the State of West Virginia, and Raleigh County Judge John Hutchison to reseal my juvenile records so they will not be opened to the public any longer.  I would like the U.S.D.C. to order the State of West Virginia and the Raleigh County Prosecutor's Office, and Kristen L. Keller to remove my juvenile records from my adult files in the Raleigh County Prosecutor's Office.  I would also like the U.S.D.C. to order the State of West Virginia to stop all state wide newspapers, television station, and radio stations from printing, broadcasting, reprinting nor rebroadcasting any information about my juvenile record.

(# 1 at 5-6).  On February 12, 2008, Plaintiff also filed a Motion for Preliminary Injunction and Prospective Injunctive Relief (# 34), in which he asks for similar relief.  Plaintiff asserts that he will suffer irreparable harm if the requested relief is not granted.  (<u>Id.</u> at 13).

The defendants assert that Plaintiff is not entitled to injunctive relief.  They first assert that Plaintiff has not demonstrated that there is an actual case or controversy as

26

required by Article III, clause 1 of the United States Constitution.  The defendants' Memoranda of Law state:

> Article III, clause 1 of the United States Constitution commands any litigant who seeks to invoke the power of federal courts to establish, as a threshold requirement, that an actual case or controversy exists. O'Shea v. Littleton, 414 U.S. 488, 94 S. Ct. 669 (1974). "Plaintiffs in the federal courts must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction."  414 U.S. at 493-94 (citing Linda R.S. v. Richard D., 410 U.S. 614, 93 S. Ct. 1146 (1973)).  "The injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (citing Massachusetts v. Mellon, 262 U.S. 447, 435 S. Ct. 597 (1923)).

> With regard to plaintiffs seeking injunctive relief the Supreme Court has required them to do more than recite how they have been allegedly harmed in the past. In O'Shea, the Court found that while past wrongs provide some evidence bearing on whether a case or controversy exists, past exposure to illegal conduct does not, in itself, establish a present case or controversy warranting injunctive relief.  414 U.S. at 495-96.  This is particularly true when the allegations of past wrongs are unaccompanied by any continuing, present adverse effects.  Id.

(# 29 at 5; # 31-4 at 10-11).

Judge Hutchison's Memorandum of Law further states:

> In the instant case, the Plaintiff seeks to invoke the equitable power of this Court to compel the actions of a state trial court judge, as well as the local court system.  He has asked this Court to force Judge Hutchison to reseal his juvenile records and have them removed from his adult criminal files, based on his unsupported contention that his juvenile records were illegally and unconstitutionally opened to the public.

> * * *

> While the Plaintiff asserts that the use of his juvenile records during his adult criminal trial offended

27

a number of constitutional provisions, he has failed to even suggest how he is presently being injured or how he is threatened with imminent future injury.  The copies of his juvenile law enforcement records from Ohio and the District of Columbia, admitted as exhibits, are sealed and were never accessible to the public or press in West Virginia. [Footnote omitted].  And even if they were not sealed, it is obvious that the Plaintiff's right to privacy and due process were never violated because he had no constitutional right to keep his juvenile records confidential or under seal. . . . Therefore, the Plaintiff has failed to allege any past, present or future infringement on his constitutional rights sufficient to invoke the jurisdiction of this Court. Moreover, any issue regarding the confidentiality of his juvenile law enforcement records should be addressed by the state that maintains the records and not a federal court.[1]

The records and transcripts from his adult criminal file, which contains the victim testimony regarding the criminal acts he committed as a juvenile are likewise insufficient to establish that he is under the threat of an imminent invasion of his constitutional rights. [FN 3]

[FN 3 - The Plaintiff has not specifically discussed the testimony of these victims.  However, he has also not provided sufficient information on how his juvenile records were "opened" to the public.  The testimony of these victims is the only access the public would have to the Plaintiff's juvenile history in West Virginia. Nonetheless, as discussed previously, the Plaintiff's juvenile records are not currently under seal in Ohio or the District of Columbia.]

---

[1] Plaintiff filed a separate civil action in the United States District Court for the District of Columbia, Hester v. Dickerson, Case No. 1:07-cv-01785-RCL, against Charles Dicekrson, the Branch Chief of the Division of Juvenile/Neglect of the Superior Court of the District of Columbia, alleging that Mr. Dickerson violated his constitutional rights by releasing Plaintiff's juvenile court records to Ms. Keller.  Mr. Dickerson filed a Motion to Dismiss contending that he is absolutely immune from liability as a court officer.  The Motion to Dismiss remains pending.  The undersigned is not aware of whether Plaintiff has sought any redress concerning these issues in the Ohio courts.

(# 29 at 9-10).  Concerning the victims' testimony, Judge Hutchison adds:

> There is no authority known to Judge Hutchison which requires the victim of a violent crime to keep the facts surrounding the crime confidential, regardless of whether or not the perpetrator was a juvenile.  The testimony of the victims in the underlying criminal trial was properly admitted pursuant to the West Virginia Rules of Evidence.  The Plaintiff had the opportunity to object to the testimony and he was given the opportunity to cross-examine these witnesses. (Docketing Statement from <u>State v. Hester</u>, Case No. 05-F-189 attached hereto as Defendant's Exhibit B).  The Plaintiff has no collateral Fourth Amendment right to silence the victims because they spoke of crimes committed by him when he was a juvenile, or because they may testify to the same in the future.

(<u>Id.</u> at 10).

Ms. Keller largely repeats the arguments made in Judge Hutchison's brief.  She adds:

> [A] prosecutor does not control whether the Court file or certain exhibits are sealed and as such, this request for an injunction does not pertain to Kristen Keller.  To the extent that Plaintiff is requesting records be pulled out of the Prosecutor's files, they are not open to the public and as such, there is no potential for harm.  Additionally, to the extent they were exhibits during trial, they have become a part of Plaintiff's records for his convictions as an adult and he has no right to privacy regarding evidence introduced during his trial.

(# 31-4 at 13-14).  She further asserts that "the public and media do not have access to the Prosecutor's files and records and, assuming that he has any present right to confidentiality, the threat that a member of the public may have access to his adult criminal file is speculative and hypothetical. (<u>Id.</u>)

29

As noted by the defendants, "the equitable powers of the federal judiciary should be used "sparingly and only in a clear and plain case.'" Rizzo v. Goode, 423 U.S. 362, 378 (1976)(quoting Irwin v. Dixon, 9 How. 10, 33 (1850)). Thus, a federal court must only invade the functions of a state trial court in the most extraordinary of circumstances. Id. at 379. (# 29 at 11; # 31-4 at 15).

The Supreme Court has also held that injunctive relief is only appropriate when it is necessary to vindicate federal laws or rights. (# 29 at 11-12; # 31-4 at 15-16). The parties note that in order to establish a right to injunctive relief, the Plaintiff must demonstrate that he has suffered or is in imminent danger of suffering a substantial irreparable injury, and that Plaintiff has no adequate injury at law. O'Shea, 414 U.S. 502. (Id.) The defendants assert that Plaintiff's claim for injunctive relief fails to meet either of these requirements because Plaintiff has not demonstrated a constitutional violation of his right to privacy or a substantial threat of irreparable injury. (# 29 at 12-14; # 31-4 at 16-17).

Plaintiff's Response to Ms. Keller's Motion to Dismiss asserts that he is suffering a threat of present and future harm. He states:

> The Plaintiff's said rights are presently being
> violated do [sic; due] to the said records are still open
> to the public and media to this day, and will be violated
> in the future, by the Plaintiff's said records continuing

30

> to be illegally exposed to the public and the media if a
> federal preliminary and prospective injunction is not
> granted.   The said records remain in the possession of
> the media, as well as the public files of West Virginia,
> which are subject to be used in the future, regardless of
> its ultimate outcome of his criminal conviction.   These
> violations    from    the    defendants    are    tangible,
> unhesitating, along with vividly occurring to this day.

(# # 32 at 18-19).   Plaintiff asserts that any citizen can obtain

copies of his records from the Prosecutor's office "because the

files are public government files."    (Id. at 23).    Plaintiff

summarily claims that he "has established a clear basis for

equitable relief and has clearly suffered an invasion of privacy

(i.e. 14th Amendment right to informational privacy), which is a

substantial irreparable injury, that stand to suffer again in the

future.   There is no adequate remedy at law other than § 1983 in

the case at hand."   (Id. at 25).

Both defendants filed reply briefs that largely repeat the

arguments made in their Memoranda of Law in support of their

Motions to Dismiss.   (## 37 and 38).   Judge Hutchison's reply adds:

> [T]he  Plaintiff  cannot  demonstrate  that  he  is  in
> immediate danger of suffering a substantial irreparable
> injury.   The copies of his juvenile records from Ohio and
> the District of Columbia which were marked as exhibits
> were  sealed  at  the  conclusion  of  his  adult  criminal
> trial.   Thus, assuming a constitutional right attaches to
> them, the Plaintiff's rights are not in jeopardy.   And
> even if these records were not sealed, the Plaintiff has
> only speculated that a member of the public may one day
> read them.   He has not stated any fact to substantiate
> this claim.    Finally, the testimony of the Plaintiff's
> victims which is included in the court records provides
> no basis for injunctive relief, The Plaintiff has no
> right to privacy which precludes the testimony of these
> victims. [Footnote omitted].   And any injunctive relief

fashioned to redact their testimony would be a totally unwarranted invasion of a state court.

Moreover, assuming for the sake of argument that the Plaintiff's juvenile records are readily available to the public in West Virginia, he has not identified any federal law that is in need of vindication. The confidentiality accorded to juvenile records is purely a creature of statute. These state statutory provisions are not premised on a constitutional right of privacy. [Footnote omitted]. Rather, these laws reflect a state policy that juvenile offenders can be rehabilitated. A federal court is not the proper forum to address violations of these state statutes. And more importantly, federal courts are clearly prohibited from ordering a state official to conform their conduct to state law. <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 104 S. Ct. 900 (1984).

(# 38 at 10-11).

The undersigned agrees that Plaintiff has not demonstrated that he is in imminent danger of irreparable harm. As previously discussed, Plaintiff has not demonstrated a violation of his federal constitutional rights by the use of evidence from his juvenile records. Moreover, Plaintiff's juvenile records that were used as exhibits at his criminal trial were sealed by Judge Hutchison, and Plaintiff has no reasonable expectation of privacy in the testimony of his former victims. Furthermore, as noted above, this federal court cannot order state officials to comply with state laws.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not established the factors necessary to grant injunctive relief. Thus, Plaintiff's claim for injunctive relief in his Complaint, and Plaintiff's Motion for

Preliminary Injunction and Prospective Injunctive Relief (# 34) must be denied.

**RECOMMENDATION**

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief can be granted against any of the defendants. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by the State of West Virginia and the Honorable John A. Hutchison (# 28) and the Motion to Dismiss filed by Kristen L. Keller (# 31). It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Motion for Preliminary Injunction and Prospective Injunctive Relief (# 34)**.**

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of

this time period may be granted for good cause shown.

     Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Synder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

     The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

     July 29, 2008
         Date

                        Mary E. Stanley
                        United States Magistrate Judge